## Robinson v. Armstrong

*Allen J. Feingold* and *M. Mark Mendel*, for plaintiff.

*Michael B. Egan* and *Joseph C. DeMaris*, for defendant.

MARUTANI, *J.*, February 15, 1984—

## ISSUE PRESENTED

The question before the court may be postulated as follows: Where plaintiff has (a) ignored for more than 28 months an express order of a court to produce records;[1] (b) failed to produce those records even after the trial judge further granted an

---

1. See order of Judge Ribner dated June 9, 1981, directing plaintiff to produce for defendant the following within 20 days:

    1. All statements by plaintiff, all witnesses, including parties who are witnesses to the accident which is the subject of the lawsuit.

    2. Any photographs relating to the within lawsuit in the possession of or under the control of plaintiff, his agents, servants, workman and/or employees or counsel.

    3. Any and all reports of experts employed by plaintiff who is expected to be called as a witness at trial.

    4. All medical records, including bills, in the possession of plaintiff's attorney concerning the treatment of plaintiff relative to the accident which is the subject of the within lawsuit.

extension to a date designated by plaintiff's own counsel, by which time a trial date had been fixed; and (c) further failed to produce the records even after plaintiff's counsel unilaterally extended his own designated date, may plaintiff freely introduce documents and evidence relating to their contents[2] at trial?

## BACKGROUND

The accident giving rise to this trespass claim, a vehicular contact with a 55-year old pedestrian plaintiff occurred on December 8, 1978, more than five years ago. Pedestrian plaintiff died 22 months later on September 29, 1980. The successor representative plaintiff now asserts that the accident either contributed to or caused the death of pedestrian-plaintiff, such contention appearing for the first time in a pretrial statement filed in September 1983,

---

2. In his pretrial statement plaintiff lists no less than 20 items or categories of documents as well as 29 witnesses including "[v]arious relatives and close friends of the plaintiff."

The documents listed by plaintiff are as follows: "1. Police report 2. Court and criminal records regarding defendant, Noel Armstrong 3. Photographs of the plaintiff 4. Photographs of the scene of the accident 5. Death Certificate 6. Bills, reports and records of Broad Street Hospital 7. Bills, reports and records of Hospital of the University of Pa. 8. Bills, reports and records of Veterans Administration Hospital 9. Bills, reports and records of Dr. Leon Cander 10. Bills, reports and records of Dr. Raymond Silk 11. Bills, reports and records of Dr. Carlucci 12. Bills, reports and records of Dr. J. Zellis 13. Bills, reports and records of Dr. Sookie Chung 14. Bills, reports and records of Dr. Samuel Sugarman 15. Bills, reports and records of Misericordia Hospital 16. Bills, reports and records of Dr. Daniel Friedmann 17. Bills, reports and records of Dr. Leonard Klinghoffer 18. Bills, reports and records of Dr. Cecil Harris 19. Employment records of the plaintiff 20. Records of Aetna Life and Casualty."

some three years following the death.[3] This not-insignificant contention is of understandable concern to defendant, there apparently being countervailing evidence that the causes of death were bronchopneumonia, carcinomatosis and carcinoma of the pancreas.[4]

As hereinbefore noted, an order to produce documents — including medical records and experts' reports which might be expected to shed light on plaintiff's asserted link between the accident and death was outstanding for some 28 months and unheeded at the time of the pretrial conference on October 5, 1983. At that conference, the trial judge nonetheless gave plaintiff additional time to comply with the earlier order; however, plaintiff failed to fully comply either by the date established then, or by a later date "established" by plaintiff's counsel himself. This court then proceeded to sustain the integrity of the explicit order issued by Judge Ribner on June 9, 1981, by directing that "plaintiff is foreclosed from presenting evidence at time of tri-

---

3. Plaintiff's "Pre-Trial and Settlement Statement," par. 1.

4. This concern was manifested by defense counsel at the time of the pretrial conference of October 5, 1983, at which time the following discussion ensued:

The Court: All right, anything else?

Mr. Egan [defense counsel]: Yes. Your Honor, on these, I don't know what they are, but this man died two years after the accident —

The Court: I understand.

Mr. Egan: — of cancer apparently, and *if these bills relate to his death and they're trying to relate his death to this accident, I would like to have a chance to have these records examined by a medical expert relating to that issue.*

Mr. Feingold: I have no objection.

(Emphasis added.) Notes of pretrial conference, October 5, 1983, pp. 4-5.

al relating to those items set forth in the [said] Order. . . ."[5]

## DISCUSSION

The concept of trial-by-ambush or by surprise has long been rejected in this jurisdiction.

We have moved away from what was described as "the sporting theory of justice" and have embraced a theory of wide-ranging and mutual discovery. "One advantage of discovery is the protection it gives the adversary against surprise evidence which can be proven false or which can be put in a truer and less damaging light if there is opportunity to investigate the matter and produce rebutting or qualifying facts." Nissley v. Pennsylvania R.R. Co., 435 Pa. 503, 507, 259 A.2d 451, 453 (1969), cert. denied 397 U.S. 1078 (1970) (Footnote omitted.)

The instant plaintiff, while refusing to produce full records expressly ordered by the court, asserts a casual connection between death and an accident that occurred nearly 22 months prior to death, an assertion for which he offered no supporting evidence in the three years following death. Yet, in his pretrial statement he liberally lists no less than 20 items or categories of documents as well as 29 witnesses including "(v)arious relatives and close friends of the plaintiff" — whomever they may be.

Pa.R.C.P. 4019(a)(1)(viii) provides that an order for sanctions is appropriate where a party "fails . . . to obey an order of court respecting discovery." The court is authorized to issue "an order . . . prohibiting [the disobedient party] from introducing in evidence designated documents, things or testimony . . . ."

---

5. See orders dated October 26, 1983 and December 13, 1983.

Having considered the factors articulated in Gill v. McGraw Electric Co., 264 Pa.Super. 368, 399 A.2d 1095 (1979), we issued an appropriate order which was formulated only after a pretrial conference, and only after plaintiff's counsel continued to violate the terms of his own representation, even as the trial date approached.

The orderly administration of justice, respect for the integrity of a long-outstanding court order, the integrity of Pa.R.C.P. 4019, established concepts of fairness, each and all of these require that the sanction applied in the instant proceeding be sustained.

The alternative is chaos, subsidization of sloth and indifference, and the resultant stagnation in our system of justice.